ASHLEY ADAMS, a Minor, by her Mother and Next Friend, Cindy Adams, *et al.*, Plaintiffs-Appellants, v. EDWARD KLINK *et al.*, Defendants-Appellees.

Second District   No. 2—90—0821

Opinion filed March 13, 1991.

Robert W. Queeney and Marc L. Fogelberg, both of McBride, Baker & Coles, of Chicago, for appellants.

Gregory P. Guth, of Holmstrom & Kennedy, P.C., of Rockford, for appellee Edward Klink.

Edward R. Telling and Stephen E. Balogh, both of Williams & McCarthy, P.C., of Rockford, for appellee Philip Asaro.

Kenneth W. Traum, of Konstantacos, Traum, Reuterfors & McWilliams, of Rockford, for appellee Rockford Memorial Hospital.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiffs, Ashley Adams, Cindy Adams, and Roger Adams, appeal an order of the circuit court granting the motion of defendants Dr. Edward Klink (Dr. Klink) and Rockford Memorial Hospital (Rockford Memorial) to strike and expunge the plaintiffs' "Amended Complaint at Law" (amended complaint) and quashing service of process on defendant Dr. Philip Asaro. The trial court found the plaintiffs voluntarily dismissed an earlier complaint against Dr. Klink and Rockford Memorial without obtaining leave to amend or reinstate. The trial court then determined it had no jurisdiction to proceed on the "amended" complaint more than 30 days after the original complaint was voluntarily dismissed. The plaintiffs maintain the amended complaint was a valid new action begun within the applicable limitations period. They maintain the trial court therefore erred in dismissing,

with prejudice, their new cause of action. We agree and therefore reverse and remand.

On August 14, 1985, the plaintiffs filed their original "Complaint at Law" against Dr. Klink and Rockford Memorial in case No. 85—L—437 in the circuit court of Winnebago County. The complaint alleged that on September 11, 1981, the defendants were negligent in failing to admit Cindy Adams to Rockford Memorial after she had been admitted to the Rockford Memorial emergency room and informed the doctor on duty that her water had broken, that she was experiencing "fluttering," and that Dr. Klink was her obstetrician. The complaint alleged that because of the defendants' negligence, Ashley Adams was born with severe and permanent injuries, including cerebral palsy. Counts I and II prayed for relief against Dr. Klink and Rockford Memorial on behalf of Ashley Adams. Counts III and IV alleged that, as a result of the defendants' negligence, Cindy and Roger Adams had spent and would continue to spend large sums of money on the care and treatment of their child's injuries and prayed for recovery on behalf of the parents against both defendants. The plaintiffs filed a jury demand and properly served process on each defendant.

On March 2, 1989, the plaintiffs obtained the voluntary dismissal without prejudice of their complaint according to section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1009). They did not obtain leave to amend or reinstate. On February 28, 1990, the plaintiffs filed an "Amended Complaint at Law" against Dr. Klink, Rockford Memorial, and a new defendant, Dr. Philip Asaro. The plaintiffs labeled the amended complaint "No. 85 L 437" and included in the caption, the phrase, "Jury Demanded."

The amended complaint made no reference to the original complaint against Dr. Klink and Rockford Memorial. Count I of the amended complaint alleged that Drs. Klink and Asaro were negligent in failing to determine, upon the first of the two occasions on which Cindy Adams was admitted to Rockford Memorial's emergency room on September 11, 1981, that she was in labor, in failing to hospitalize her or to attempt to delay the birth of Ashley Adams, in failing to inform Cindy Adams of the possibility of a cesarean section, and in otherwise breaching their duty of due care toward Cindy Adams in connection with the birth of her daughter, Ashley. Count II alleged that Rockford Memorial was liable for the negligent behavior of certain of its nurses employed in the emergency room on September 11, 1981, and that these nurses' various breaches of their duty of due care caused the injuries suffered by Ashley Adams. Counts III and IV alleged that Rockford Memorial was liable for the negligence of Drs.

Klink and Asaro, and count V alleged that Rockford Memorial breached an independent duty of care to the plaintiffs. Counts I through V prayed for damages on behalf of Ashley Adams. Counts VI and VII prayed for judgment against all the defendants on behalf of Cindy and Roger Adams in the amount that they had expended and would continue to expend for the care and treatment of Ashley Adams' injuries. *All* the defendants were served with process by March 8, 1990.

On April 9, 1990, Rockford Memorial, later joined by Dr. Klink, moved to strike and expunge the amended complaint and any summons issued after the filing of the amended complaint. The motion alleged that, because more than 30 days had passed since the plaintiffs' original complaint had been voluntarily dismissed, there was no lawsuit pending in which the amended complaint could be filed and the circuit court, therefore, had no jurisdiction over the subject matter or the parties. On May 31, 1990, Dr. Asaro, making a special and limited appearance, moved to quash the plaintiffs' summons and service of process on him. Dr. Asaro argued that, because more than 30 days had passed since the order voluntarily dismissing the original complaint, the court had lost jurisdiction of the case and could not reinstate case No. 85—L—437 or authorize further filings in the case.

In response, the plaintiffs argued that the amended complaint was filed with the clerk of the circuit court within a year of the voluntary dismissal of the original complaint and was thus a valid refiling of the action pursuant to the limitations provision of section 13—217 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 13—217). The plaintiffs argued that the filing of the amended complaint and the service of summons on each defendant gave the circuit court jurisdiction over the subject matter and the parties. The plaintiffs requested that the circuit court grant them leave to strike the word "Amended" from the label on page one of the amended complaint and direct the clerk of the circuit court to designate numerically the complaint and to collect fees according to the current procedures of the clerk's office.

On August 27, 1990, the circuit court held a hearing on the defendants' motions. The defendants argued that the amended complaint was a nullity because the lawsuit had been terminated when the original order of voluntary dismissal was not appealed after 30 days. The plaintiffs argued that they had filed a new cause of action within the one-year limitation of section 13—217 of the Code of Civil Procedure. Counsel for the plaintiffs acknowledged that they had not filed a new jury demand or paid additional filing fees but stated that this

was only because employees of the circuit clerk's office had informed employees of the plaintiffs' attorneys that no new jury demand or fees would be needed.

The parties submitted affidavits from sundry persons. Georgann Moran, secretary to the plaintiffs' attorney, stated that on February 26, 1990, as she was making revisions to the amended complaint, the plaintiffs' attorney informed her that he would be out of the office on February 27 and 28 and that she was to call the circuit clerk's office in Rockford to determine whether the filing of the amended complaint required a filing fee and, if so, in what amount. Per these instructions, she made two calls at different times on February 27, before the filing of the pleading. She informed the first deputy clerk to whom she spoke that the firm wanted to refile a complaint in a medical malpractice case where the plaintiff had voluntarily dismissed the complaint on or about March 2, 1989. She asked if this filing or refiling would require a filing fee. The deputy clerk told her that no filing fee was necessary. The second call later that day brought the same opinion from another employee of the circuit clerk's office. In reliance on these opinions, Moran did not obtain a check from the firm's office services department before giving the final version of the amended complaint to Lori Barnicke, a paralegal with the plaintiffs' attorney's firm, on the morning of February 28, 1990.

Lori Barnicke stated in her affidavit that on February 28, 1990, she filed the amended complaint with the clerk of the Seventeenth Judicial Circuit and that all copies of the amended complaint were stamped by an assistant clerk. Because she considered the amended complaint a new action in compliance with the requirements of Illinois law pertaining to the filing of causes of action after a voluntary dismissal, she prepared and presented to this same clerk a written demand for a jury trial. The clerk then informed her that, because a jury demand had previously been filed, no second demand need be filed. The next day, when she returned to the circuit clerk's office to have the summonses issued, another deputy clerk, after consulting with her supervisor, an unidentified judge, and an unidentified lawyer, informed Barnicke that the unidentified judge had told the deputy clerk that the filing of an amended complaint was the proper way to refile the previously dismissed complaint. After this conversation, the deputy sheriff accepted Barnicke's summonses, complaints and checks and indicated that the defendants would all be served.

Donna Ryan, a deputy clerk, stated in her affidavit that on February 28, 1990, she received the amended complaint for filing, that she recalled no special circumstances surrounding the filing nor question-

ing how it was to be filed. Had she been asked, she would have indicated that "no filing fee was required to file an Amended Complaint and that no Jury Demand was necessary for case No. 85 L 437 as one had previously been filed therein."

Dolores Peila, also a deputy clerk, stated in her affidavit that on March 1, 1990, she received for issuance certain summonses in relation to the plaintiffs' suit. She did not recall any question being raised at the time about the propriety of filing an amended complaint in this cause and that, had a question arisen, she would have contacted either Theresa LaLoggia or John Fosha, those being her immediate supervisors. Dolores stated she had not contacted any judge or attorney with regard to the filing of an amended complaint in this cause and that, had she contacted anyone about the propriety of filing an amended complaint in this cause or about the issuance of summonses in this cause, she would have so noted on the docket sheet.

Theresa LaLoggia, a deputy clerk and immediate supervisor of Donna Ryan and Dolores Peila, stated in her affidavit that any questions regarding the filing of documents encountered by persons under her direction would have been referred either to her or to her superior, John Fosha. Further, from time to time she had, pursuant to established policy, contacted Assistant State's Attorney Charles Prorok regarding procedural questions arising in the office, and she recalled making no such inquiry to Prorok regarding the filing of an amended complaint in this cause and would not have made any such inquiry to any other attorney. Finally, she stated she made no such inquiry to Chief Judge Agnew or any other judge.

John Fosha, administrative assistant for the circuit clerk's office, stated in his affidavit, that, to the best of his knowledge and belief, he had no involvement with the filing of the amended complaint in this cause.

Charles Prorok, assistant State's Attorney for Winnebago County, stated in his affidavit that part of his duties included answering questions posed by supervisory personnel in the circuit clerk's office regarding the collection of fees and that he was not contacted by any employee of the circuit clerk's office with regard to the filing of the amended complaint in this cause.

The trial court determined that, because the case was finally concluded 30 days after the March 2 order of voluntary dismissal, and the amended complaint had been filed without leave of court on February 28, the court lacked jurisdiction to proceed on the amended complaint. The court granted the motion to strike and expunge the amended complaint and the motion to quash service on Dr. Asaro.

■■ The defendants assert, and the plaintiffs concede, that after the original complaint was dismissed without leave to amend or reinstate, the plaintiffs' only means to recover against the defendants was to start a new action. We agree. (See *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302; *Howard v. Francis* (1990), 204 Ill. App. 3d 722, 725.) The issue here is whether the plaintiffs filed a new action or simply made a futile attempt to amend a legally null complaint. We conclude that under *Vukovich v. Custer* (1953), 415 Ill. 290, and *Kasper v. Frank* (1972), 9 Ill. App. 3d 481, the plaintiffs commenced a new action valid against all the defendants.

In *Vukovich*, a complaint was filed in the name of John Vukovich against two defendants, including Custer, the driver of the car that collided with the car in which Vukovich was riding. John Vukovich had died about an hour before the complaint was filed. Just under a year after the complaint was filed the wife of John Vukovich, as administratrix of his estate, was substituted as a party plaintiff and given leave to file an amended complaint. Custer moved to strike the amended complaint and dismiss the action, arguing that the original complaint was a nullity because it was filed after the death of John Vukovich and that the amended complaint was therefore of no force and effect. The trial court granted the motion and the appellate court affirmed. The supreme court reversed and remanded. The court held that, even assuming that the original complaint was a nullity, the amended complaint still stated a good cause of action and was *in reality an original complaint timely filed*. The court went on to state:

"The net of defendant's contention is that plaintiff is not entitled to have the merits of her case tried because she erroneously inserted the adjective, 'amended,' in the caption and in the body of the complaint. Had she filed this same complaint, eliminating any reference to the earlier complaint, she would have stated a good cause of action ***. *** To hold that the administratrix cannot have a trial of the merits because she did not label the amended complaint as a new and independent action would exalt form at the expense of substantive rights. Such a technical and sterile application of the Civil Practice Act would contradict its command of a liberal construction and disregard its emphasis on the substantive rights of the parties." *Vukovich*, 415 Ill. at 293.

The appellate court applied *Vukovich* in *Kasper*. There the plaintiffs filed a complaint and an amended complaint against Curtis and Uriel Jones after Uriel Jones had died. After the court granted summary judgment for Curtis Jones, the plaintiffs filed a "second

amended complaint" against the administrator of Uriel Jones' estate, alleging the same facts and ground for recovery as in the first two complaints. The defendant argued because the original suit against the dead man was a nullity any amendments were also void. The trial court agreed and dismissed the "second amended complaint." The appellate court reversed and remanded. Citing *Vukovich*, the court held that the "second amended complaint" was an entirely new complaint timely commenced and otherwise valid. The court stressed that the "second amended complaint" was complete of itself and did not refer to or incorporate the earlier complaint.

The courts in *Vukovich* and *Kasper* emphasized that the "amended complaints" were complete of themselves and that the Civil Practice Act was to be construed liberally so that controversies could be decided according to the parties' substantive rights. The courts explicitly stated that the titling of the "amended complaints" was of no importance. In neither case did the court even discuss whether the plaintiff(s) had made a new jury demand or paid extra filing fees in connection with the "amended complaint."

■■ ■ Applying *Vukovich* and *Kasper*, we determine, as a matter of law, the plaintiffs' "amended complaint" was in reality a valid and timely filed new action as to all the defendants. The present Code of Civil Procedure, no less than the former Civil Practice Act, is to be construed liberally so that controversies may be speedily and finally determined according to the substantive rights of the parties. (Ill. Rev. Stat. 1989, ch. 110, par. 1—106.) The plaintiffs' amended complaint, like those in the cited cases, is complete of itself and makes no reference to the earlier complaint. The defendants make no showing that they were prejudiced by the use of the term "amended" or the number of the old complaint in the caption. The defendants argue that the plaintiffs should be deprived of an otherwise valid cause of action because they mistitled their complaint. We reject this argument just as did the courts in *Vukovich* and *Kasper*.

■ In reaching this conclusion we attach no significance to the plaintiffs' apparent failure to pay new filing fees or renew their demand for a jury trial after the filing of the amended complaint. Such omissions do not affect a court's jurisdiction to hear a cause of action. (*Ayala v. Goad* (1988), 176 Ill. App. 3d 1091, 1095.) As we have noted, the courts in *Vukovich* and *Kasper* did not even discuss any payment of additional filing fees or renewed demands for trial by jury. Indeed those courts appeared unwilling even to discuss the plaintiffs' subjective intentions, if any, to file amended complaints rather than new proceedings. When the plaintiffs here filed their complaint and served

summonses on the defendants, they invoked the circuit court's jurisdiction over the subject matter and parties in their amended complaint. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—201.) The trial court therefore erred in finding that it lacked jurisdiction to proceed on the amended complaint.

The defendants rely on *Petrella v. Leisky* (1981), 92 Ill. App. 3d 880, and argue that the issue in this case is not whether the plaintiffs could have filed a new complaint but whether they actually did so. We agree that the crucial consideration is what the plaintiffs actually did, but hold, as we have explained, that what they actually did was file a valid new action. *Petrella* is distinguishable, as there the trial court properly dismissed a "supplemental complaint" filed against a party not originally named by the plaintiff as a defendant. The plaintiff had filed the "supplemental complaint" without leave of court or notice to other parties. The appellate court held that the plaintiff's failure to follow the clear requirements of the Civil Practice Act for adding an additional defendant mandated the dismissal of the "supplemental complaint" even though the plaintiff could properly have added the additional defendant within the applicable limitations period by obtaining leave from the trial court to do so. The plaintiff's disregard of the clear requirements of the Civil Practice Act, effectively an attempt to circumvent the authority of the trial court, went far beyond the inapt titling of the complaint in the present case.

■ Dr. Asaro, citing *Gonzalez v. Thorek Hospital & Medical Center* (1989), 186 Ill. App. 3d 648, argues that the filing of the amended complaint is not a new action as to him within the meaning of section 13—217, which provides that, within a year after a plaintiff has obtained the voluntary dismissal of an action, the plaintiff "may commence a new action within one year or within the remaining period of limitation, whichever is greater" (Ill. Rev. Stat. 1989, ch. 110, par. 13—217). Dr. Asaro does not deny that he was sued within the applicable limitations period. It is not material that he was not a party to the original complaint. *Gonzalez* would require that Dr. Asaro be named in the original complaint only if the plaintiffs were seeking to use the provisions of section 13—217 to extend the time for bringing an action against Dr. Asaro beyond that otherwise allowed by the applicable limitations period. See *Hugley v. Alcaraz* (1986), 144 Ill. App. 3d 726.

■ We also reject Dr. Asaro's argument that he was unduly prejudiced by the filing of the amended complaint 4½ years after the original action was instituted. Any prejudice was the result of a delay

in effecting service on him and not of formal defects in the amended complaint. See *Vukovich*, 415 Ill. at 293-94.

■■ Dr. Klink and Rockford Memorial have renewed their motion to dismiss this appeal, claiming the order is not final and appealable. We affirm our original denial. We have concluded that the trial court's action amounted to the dismissal with prejudice of a valid complaint. The court found that it lacked jurisdiction to hear the amended complaint and also denied the plaintiffs' request for leave to amend the amended complaint. The plaintiffs did not renew their request for leave to amend after the court entered its order. We hold that we have jurisdiction to hear the appeal pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301), as the plaintiffs are appealing a final judgment of the circuit court. *Branch v. European Autohaus, Ltd.* (1981), 97 Ill. App. 3d 949, 951-52; *Bates v. Ulrich* (1976), 38 Ill. App. 3d 203, 204-05.

The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

BOWMAN and GEIGER, JJ., concur.