NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 200109-U

FILED
June 25, 2020
Carla Bender
4th District Appellate
Court, IL

NOS. 4-20-0109, 4-20-0110, 4-20-0111, 4-20-0112, 4-20-0113 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* A.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County |
| Petitioner-Appellee, | ) | Nos. 18JA71 |
| v.  (No. 4-20-0109) | ) | 18JA72 |
| Tanara H., | ) | 18JA70 |
| Respondent-Appellant). | ) | 18JA74 |
| _____ | ) | 18JA73 |
| | ) | |
| | ) | |
| *In re* D.H., a Minor | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.  (No. 4-20-0110) | ) | |
| Tanara H., | ) | |
| Respondent-Appellant). | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| *In re* A.M., a Minor | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.  (No. 4-20-0111) | ) | |
| Tanara H., | ) | |
| Respondent-Appellant). | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| *In re* S.H., a Minor | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |



v.      (No. 4-20-0112)          )
Tanara H.,                       )
        Respondent-Appellant).   )
                                 )
_____   )
                                 )
*In re* D.M., a Minor            )
                                 )
(The People of the State of Illinois,   )
        Petitioner-Appellee,     )
        v.      (No. 4-20-0113)  )
Tanara H.,                       )  Honorable
                                 )  Thomas M. O'Shaughnessy,
        Respondent-Appellant).   )  Judge Presiding.

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

## ORDER

¶ 1    *Held*:   By finding respondent to be an "unfit person" (750 ILCS 50/1(D)(b) (West 2018)) and by finding it would be in the best interests of her children to terminate her parental rights, the circuit court did not make findings that were against the manifest weight of the evidence.

¶ 2    The circuit court of Vermilion County granted a petition by the State to terminate the parental rights of respondent, Tanara H., to her five children: A.H., born August 4, 2016; D.H., born July 30, 2017; A.M., born July 20, 2018; S.H., born March 18, 2015; and D.M., born July 16, 2019. Respondent appeals in all five cases, and we have consolidated the appeals.

¶ 3    Respondent challenges the circuit court's findings that (1) she was an "unfit person" within the meaning of section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2018)) and (2) it was in the best interests of her five children to terminate her parental rights. We are unconvinced that either finding is against the manifest weight of the evidence. Therefore, we affirm the judgments in these five cases.

¶ 4                           I. BACKGROUND

¶ 5                                    A. The Unfitness Hearing

¶ 6             On January 15, 2020, the circuit court held an evidentiary hearing on the State's petition for the termination of parental rights. The State called Lisa Janiszewski, who testified substantially as follows.

¶ 7             Since April 2019, Janiszewski had been the caseworker assigned to these five cases. One of her duties as the caseworker was to administer the service plans, the plans to remediate parental deficiencies. People's exhibit No. 1 was the most recent service plan, filed with the court on January 9, 2020, and it set for respondent the same goals as the preceding service plans.

¶ 8             One of the goals in this service plan was for respondent to undergo a substance abuse assessment and to follow any recommendations that resulted from the assessment. Respondent had completed a substance abuse assessment, but she scarcely had begun the level 1 outpatient treatment that was recommended after the assessment. Level 1 outpatient treatment required her to attend one group session per week and an individual session as needed. She had attended only one group session and only one individual session. Then she stopped coming to scheduled sessions—even though she needed substance abuse treatment, considering that in August 2019 she tested positive for methamphetamine and cannabis.

¶ 9             Respondent also stopped coming to parent-child visitations, another recommended service. There was supposed to be a visitation every week for two hours, and the agency even provided transportation for respondent to attend the scheduled visitations. Nevertheless, since April 2019, respondent had visited her children only four times. The driver would arrive to pick respondent up, and she was not there. The last time she visited her children was November 15, 2019.

¶ 10　　　　　Respondent skipped appointments with the caseworker, too. The last contact that Janiszewski was able to have with respondent was on December 13, 2019, by text message. Janiszewski did not know at what address to find respondent. And in that last contact, respondent never asked about visiting the children.

¶ 11　　　　　　　　　　　B. The Best-Interest Hearing

¶ 12　　　　　After finding, by clear and convincing evidence, that respondent had failed to show a reasonable degree of interest, concern, or responsibility as to her children's welfare, the circuit court held a hearing on the question of whether the termination of parental rights would be in the children's best interests.

¶ 13　　　　　Again, the State called Janiszewski, who testified substantially as follows.

¶ 14　　　　　Respondent's last visit with the children was on November 15, 2019. She had never sent them any cards, gifts, or letters, either.

¶ 15　　　　　Since being removed from respondent's custody, A.M. has been at the same traditional foster home in Normal, Illinois. There are three children in this home: A.M and two biological children, aged two and six. The mother stays at home and homeschools the oldest child. A.M. is especially close to the two-year-old, Elise, with whom she shares a bedroom. The family is connected to a church and to the community. The foster parents would like to adopt A.M.

¶ 16　　　　　The other four children, A.H., D.H., S.H., and D.M., were initially placed with fictive kin. After about a month, however, in July 2018, they were removed from that placement due to safety concerns.

¶ 17　　　　　Ever since then, A.H., S.H., and D.M. have been together in a traditional foster home in Danville, Illinois, and D.H. has been in a traditional foster home in Bloomington, Illinois.

¶ 18    Janiszewski describes A.H., S.H. and D.M. as well-cared-for in their foster home in Danville. They are bubbly, playful, and energetic. The foster parents would like to adopt them.

¶ 19    D.H. likewise is well-bonded to his foster parents in Bloomington. There are three other children in that home, aged 8, 7, and 1. D.H. shares a bedroom with the one-year-old and is especially close to her. They go to the same daycare and feel safe and loved. The foster parents are willing to adopt D.H.

¶ 20    For all five children, then, the placements have been stable since July 2018. The children continue to have contact with one another, and the plan is for them to have periodic get-togethers. Janiszewski believed it was in the children's best interests for them to stay where they were.

¶ 21    At the conclusion of the best-interest hearing, the circuit court found that the termination of parental rights would be in the best interests of A.H., D.H., A.M., S.H., and D.M. Accordingly, the court terminated the parental rights of respondent and the fathers, known and unknown.

¶ 22                                    II. ANALYSIS

¶ 23                          A. The Finding of Parental Unfitness

¶ 24    There are two steps to the involuntary termination of parental rights. First, the State must prove, by clear and convincing evidence, that the parent is an "unfit person" as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). 705 ILCS 405/2-29(2) (West 2018)); *In re M.I.*, 2016 IL 120232, ¶ 20. If the State proves that the parent meets one of the definitions of an "unfit person" in section 1(D), the circuit court will hold a subsequent and separate hearing, in which the State must prove, by a preponderance of the evidence (*In re D.T.*,

212 Ill. 2d 347, 367 (2004)), that the proposed termination of parental rights would be in the child's best interests. 705 ILCS 405/2-29(2) (West 2018); *M.I.*, 2016 IL 120232, ¶ 20.

¶ 25 When a parent appeals the circuit court's findings that he or she is an "unfit person" and that terminating parental rights is in the best interests of the child, we do not retry the case but instead limit ourselves to deciding whether the court's findings are against the manifest weight of the evidence. *In re A.W.*, 231 Ill. 2d 92, 104 (2008); *In re Austin W.*, 214 Ill. 2d 31, 51-52 (2005). This is a deferential standard of review. A finding is against the manifest evidence only if the evidence "clearly" calls for the opposite finding (*In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006)), such that "no reasonable person" could arrive at the circuit court's finding on the basis of the evidence in the record (*Mizell v. Passo*, 147 Ill. 2d 420, 425-26 (1992); *Baker v. Daniel S. Berger, Ltd.*, 323 Ill. App. 3d 956, 963 (2001)).

¶ 26 Therefore, we begin by considering whether it is "clearly evident," from the evidence in the record, that the State failed to prove, by clear and convincing evidence, that respondent met the definition of an "unfit person" that the State cited in its petition to terminate her parental rights. *In re A.J.*, 269 Ill. App. 3d 824, 828 (1994). The State alleged that respondent was an "unfit person" in that she had "[f]ail[ed] to maintain a reasonable degree of interest, concern[,] or responsibility as to the child[ren's] welfare." 750 ILCS 50/1(D)(b) (West 2018).

¶ 27 "It is well established that a failure to comply with an imposed service plan and infrequent or irregular visitation with the child may support a finding of unfitness under [section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2018)).]" *In re Jeanette L.*, 2017 IL App (1st) 161944, ¶ 18. Arguably, respondent showed a less than reasonable degree of responsibility in addressing her addiction to methamphetamine, an addiction that would be a serious problem for a parent with five young children in her care.

¶ 28    Also, respondent's visitation of the children was not only infrequent but almost nonexistent. Visitation was supposed to be weekly, but from April 2019 to the date of the hearing, January 15, 2020, respondent had visited her children only four times. Her last visit was November 15, 2019. The most recent contact that respondent had with Janiszewski was on December 13, 2019, by text message, and at that time respondent did not inquire about visiting the children. Arguably, respondent thereby failed to show a reasonable degree of interest or concern as to her children. See 750 ILCS 50/1(D)(b) (West 2018). By finding respondent to be an "unfit person" within the meaning of section 1(D)(b), the circuit court did not make a finding that was against the manifest weight of the evidence.

¶ 29                    B. The Best-Interest Finding

¶ 30    The argument that respondent makes regarding the children's best interests is not much of an argument. She writes: "In this case, [respondent's] love for her children was never questioned. No evidence was presented that there was not a bond between [respondent] and her children. The minor children should remain in the same household and not be separated; and the place for them to stay together is with [respondent]." But respondent's love for her children and her bond with them were legitimately in question. She had shown little interest in her children during the nine months preceding the hearing on the petition to terminate her parental rights. She did not even bother showing up at the hearing. It is true that, ideally, children should remain together with their parents—but not if the parents, by their unfitness and indifference, make that unfeasible. The circuit court could reasonably take the view that the loving and happy foster homes where the children had been residing since July 2019, and where the foster parents were willing to adopt them, offered the children the best hope of permanency. See 705 ILCS 405/1-3(4.05)(d), (f), (g) (West 2018).

¶ 31                              III. CONCLUSION

¶ 32        For the foregoing reasons, we affirm the circuit court's judgments in these five

cases.

¶ 33        Affirmed.